IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

BRANDY R. TERRELL,            )
                              )
          Plaintiff,           )
                              )
v.                            )    Case No. CIV-13-127-RAW-KEW
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                              )
          Defendant.           )

                    **REPORT AND RECOMMENDATION**

    Plaintiff Brandy R. Terrell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

            **Social Security Law and Standard of Review**

    Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on June 25, 1977 and was 34 years old at the time of the ALJ's decision. Claimant completed her high school education as well as emergency medical training. Claimant has worked in the past as a secretary, ambulance driver, and housekeeping cleaner. Claimant alleges an inability to work beginning November 30, 2006 due to limitations resulting from anger, anxiety, depression, confusion, bipolar disorder, and high

blood pressure.

**Procedural History**

On May 27, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 17, 2010, an administrative hearing by video conferencing was held before Administrative Law Judge ("ALJ") Michael Kirkpatrick. On November 30, 2011, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on February 15, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform medium work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to

find certain additional conditions as severe impairments at step two; (2) reaching an improper RFC determination; and (3) making erroneous findings at step five.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of mood disorder and essential hypertension. (Tr. 30). The ALJ also found Claimant retained the RFC to perform medium work except that she could perform simple, unskilled tasks that do not require interaction with the general public. (Tr. 33). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of hand packer, floor waxer, and dishwasher, all of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 42).

Claimant contends the ALJ should have found her headaches, edema in her lower extremities, pain in her hands, pain in her back and hips, and stomach pain and diarrhea as severe impairments when considered cumulatively. Claimant asserts that the ALJ should have ordered a consultative examination or contacted her treating physicians to "get a more comprehensive picture of all of [Claimant's] impairments and the limitations that they cause." Since the ALJ determined Claimant suffered from other severe

impairments, the sole question presented by Claimant's arguments is whether the inclusion of these other medical conditions as severe impairment precludes work activity at any exertional level. This is accomplished through an assessment of the RFC, which is an administrative finding to ascertain what an individual can still do despite her limitations. It assesses the extent to which an individual's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [an individual] can do in a work setting." 20 C.F.R. § 404.1545(a).

The medical record indicates Claimant experienced "redness and welling (sic) of the hands" in an examination on November 5, 2007. The physician noted, however, that there was no arthritic changes to the hands and no joint swelling. (Tr. 263). On April 7, 2009, Claimant was noted to have pitting edema below the knees. (Tr. 276). On July 17, 2009, the edema was once again acknowledged. (Tr. 278). However, on August 17, 2009, the physician found no edema of the lower extremities. She did report a headache. (Tr. 280). On January 3, 2011, the physician noted a history of bilateral swelling in the hands and feet, turning red over several months, left hip pain for several years, pain in the lower back, feeling hot and occurring intermittently with random movement of

the hands and arms. He also found trace pitting edema below the knees. (Tr. 322). The physician's plan was to monitor the swelling and he diagnosed muscle spasms. Id.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See e.g.* Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his

8

physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1). Additionally, once a severe impairment is found, the ALJ must proceed through the sequential evaluation. In the subsequent steps, the ALJ must consider the combined effect of both severe and non-severe impairments. Soc. Sec. R. 96-8p.

Claimant has failed to meet her burden of establishing that any of these additional conditions limit her ability to engage in basic work activities. Claimant offers supposition that the conditions must affect her ability to work because they exist, which understates the inquiry. The medical record does not indicate any functional limitations bearing upon her ability to engage in work activity caused by these conditions. As a result, the ALJ did not err in failing to include these conditions as severe impairments.

### RFC Determination

Claimant asserts the ALJ failed to properly assess her RFC by

failing to include the aforementioned conditions in his determination. As stated, the medical record does not support the restrictions upon his RFC urged by Claimant due to these additional problems.

Claimant also contends the ALJ failed to fully consider her mental impairments in his RFC findings. Specifically, Claimant references her panic attacks and other mental conditions as having an effect upon her ability to work. Claimant states the ALJ improperly rejected the opinion of Dr. Eric Broadway who provided a Residual Functional Capacity Secondary to Mental Impairments statement on March 14, 2011.

Dr. Broadway found Claimant experienced "extreme" limitation in the functional areas of performing activities within a schedule; maintaining regular attendance; sustaining an ordinary routine without special supervision; working in coordination or proximity to others without being distracted by them; completing a normal workday (without interruptions from psychologically-based or pain related symptoms); completing a normal work week (without interruptions from psychologically-based or pain related symptoms); demonstrating reliability; responding and adjusting to the use of new and unfamiliar tools and/or machines; behaving in an emotionally stable manner; dealing with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without

10

distracting them or exhibiting behavioral extremes; and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. Dr. Broadway also found Claimant was severely limited in the areas of performing without an unreasonable number or length of rest; responding appropriately to changes in work setting; responding appropriately to changes in work procedures; and traveling in unfamiliar places or using public transportation. He found "marked" limitations in the areas of following work rules; relating to coworkers; interacting with supervisors; dealing with work stresses; and functioning independently. Dr. Broadway found Claimant had "moderate" limitations in an additional four functional areas. (Tr. 328-31)

Dr. Broadway noted that Claimant's diagnoses included panic disorder with agoraphobia, major depression, and generalized anxiety. (Tr. 329). He also found that Claimant "cannot interact well with crowds, peers, stressors, criticism, new problems." He also noted that Claimant's medication caused a sedation side effect. Dr. Broadway states in the assessment that his first examination of Claimant was on April 28, 2010. (Tr. 330-31).

The ALJ rejected Dr. Broadway's opinion stating that the timing of appointment with Claimant was "just a few days following claimant's denial reconsideration determination". The ALJ also noted that Dr. Broadway's progress note was dated 14 days before Claimant's hearing. Dr. Broadway's progress note indicated

11

Claimant was not receiving therapy and refused referral due to financial considerations. The note also stated that Claimant had "no complaints at this time". (Tr. 346). The ALJ concluded that Dr. Broadway's functional evaluation invaded the purview of the ALJ. He stated that Dr. Broadway's assessment form was completed "in such as (sic) fashion as to opine the claimant was disabled". The ALJ found that the assessment form was "not in the least bit probative". The ALJ also found Dr. Broadway's functional conclusions were not supported by medical documentation. (Tr. 35-38).

While the ALJ engaged in unnecessary histrionics in rejecting Dr. Broadway's opinion on Claimant's functional limitations, his conclusion regarding the lack of support for the extreme findings of mental limitations contained in the assessment form is evident. The sole treatment note from Dr. Broadway dated October 3, 2011 indicates that Claimant reported "she often has depression" but denied any suicidal feelings. She was not in therapy and declined referral because she could not afford the treatment. Claimant did not experience auditory or visual hallucinations. Her sleep was "all right" since she was able to sleep during the day. Her anger management was considered "fair" but "off and on". Dr. Broadway did not find any psychotic symptoms. He noted Claimant was in his office for a three month follow-up and medication refill but had "[n]o complaints at this time." (Tr. 346). He diagnosed Claimant

with bipolar I, most recent, depressed symptoms without psychotic features. (Tr. 347).

On August 24, 2010, Claimant also underwent a mental status examination by Dr. Diane Brandmiller. Dr. Brandmiller found Claimant arrived for her appointment on time, became teary during the interview but her speech was of average rate and tone and she was cooperative during the interview. Claimant's thought processes were logical and goal-oriented. She believes crowds are talking about her problems when she leaves home. She reported a variable mood with depression and anxiety. She lost weight, sleeps four to five hours a night, does not have much energy and her concentration is "all right." She cries weekly, denies any thoughts of suicide, worries about not being able to care for her children, yells when she is angry, and cries when she is stressed. She was alert and oriented to time, place, and person. (Tr. 294). Claimant was able to interpret similarities and proverbs. Dr. Brandmiller diagnosed Claimant with mood disorder NOS. Her short term memory, concentration, and abstract thinking appeared intact. Claimant's expressive and receptive language skills also appeared intact. (Tr. 295).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the

opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. While Dr. Broadway certainly treated Claimant, neither his treatment notes nor the objective findings of Dr. Brandmiller supported the functional limitations he imposed in his assessment form. His opinion was not entitled to controlling weight. The ALJ considered the opinion but nothing in the medical record provided the necessary support for the conclusions reached by Dr. Broadway. The ALJ did not err in failing to give the opinion weight.

Claimant also challenges the credibility analysis performed by the ALJ. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that

14

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ appropriately considered Claimant's testimony but did not find it entirely credible because the medical record did not support the extent of her alleged limitations. The ALJ connected the record with his findings sufficiently to satisfy the regulations' requirements. While the boilerplate language utilized by the ALJ is not helpful or appropriate, the fact remains that the level of limitation to which Claimant testified is not supported by the medical record.

### Step Five Analysis

The ALJ's questioning of the vocational expert mirrored his RFC findings. This Court attributes no error to the ALJ's step five determination.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 25th day of June, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE